**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-5155**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH H. HARRIS, JR.,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Robert E. Payne, District Judge.  (3:06-cr-00163)

———————

Submitted:  July 11, 2007          Decided:  July 20, 2007

———————

Before WILKINSON and SHEDD, Circuit Judges, and WILKINS, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

Charles A. Gavin, BLACKBURN, CONTE, SCHILLING & CLICK, P.C., Richmond, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Elizabeth C. Wu, Assistant United States Attorney, Richmond, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joseph Harris and Michael Pierce entered a Wachovia Bank in Chesterfield County, Virginia on December 28, 2004. Both were armed and wearing masks and gloves. Upon entering, Harris jumped over the counter and demanded that the tellers give him U.S. currency in large bills only with "no dye packs or funny money." Meanwhile, Pierce remained in the lobby controlling the crowd by pointing a gun in the direction of bank employees and customers and yelling for them to get on the floor.[1] Harris took about $8400 from the teller's drawer, and he and Pierce then fled the area on foot to a wooded area adjacent to the bank.

Harris was ultimately indicted on May 16, 2006 for one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (2000). On August 16, 2006, Harris pled guilty, without the benefit of a plea agreement, to the sole count in the indictment. Following Harris' guilty plea, the United States Probation Office prepared Harris' presentence report. The probation office calculated Harris' total offense level at 24 and his criminal history at category VI based on Harris' 30 criminal history points. The guidelines recommended a sentencing range of 100-125 months' imprisonment. Harris' presentence report also noted that an upward departure pursuant to United States Sentencing Guidelines § 4A1.3

_____

[1]According to the presentence report, Harris and Pierce both pointed their weapons at employees and customers.

might be appropriate in Harris' case. According to the presentence report, a number of Harris' convictions were not included in his criminal history score because they occurred outside the applicable time periods under U.S.S.G. § 4A1.2(e), and one of Harris' convictions was not included because the maximum number of one-point convictions under U.S.S.G. § 4A1.1(c) had been exceeded. If all of Harris' adult convictions had been included in his criminal history score, Harris would have had an additional 48 criminal history points for a total of 78 criminal history points.

The Government filed a motion for upward departure, alleging that Harris' criminal history score underrepresented the seriousness of Harris' criminal history. Harris filed a response in opposition to the Government's motion. At Harris' November 1, 2006 sentencing hearing, the Government argued that Harris, although not technically a Career Offender, should be sentenced as a Career Offender because Harris had been committing crimes his entire life. The district court agreed with the Government. The court determined that Harris' criminal history placed him in a criminal history category VI and that if Harris had been sentenced as a Career Offender, his advisory guidelines range would have been 34. The court then adjusted Harris' guidelines range three points from 34 to 31 for acceptance of responsibility and sentenced Harris to 188 months' imprisonment, which was within Harris' adjusted advisory guidelines range. Harris timely noted an appeal.

On appeal, Harris raises three challenges to the district court's grant of the Government's motion for an upward departure of his sentence. First, Harris alleges that the district court abused its discretion in granting the Government's motion. Second, Harris alleges that his sentence was substantively unreasonable. Third, Harris challenges the method the court used in determining his upward departure. For the reasons that follow, we affirm the judgment of the district court.

A decision by a district court to impose a departure sentence under U.S.S.G. § 4A1.3 is reviewed for reasonableness. See United States v. Dalton, 477 F.3d 195, 197 (4th Cir. 2007). This reasonableness review involves both procedural and substantive components. United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006). Following United States v. Booker, 543 U.S. 220 (2005), a district court must engage in a multi-step process at sentencing. Moreland, 437 F.3d at 432. After making appropriate findings of fact and determining the applicable guidelines range, the court must determine whether a sentence within that range serves the factors set forth in 18 U.S.C. § 3553(a) (West 2000 and Supp. 2007) and if not, select a sentence that does serve those factors. Id. Prior to imposing a departure sentence, the district court must first determine whether a departure is appropriate based on the guidelines or relevant case law. Id. The district court also must articulate the reasons for departing from the advisory guidelines

- 4 -

range. Id. Here, the district court's decision to depart upward from Harris' original advisory guidelines range was both procedurally and substantively reasonable.

The district court specifically determined that, to serve the factors in 18 U.S.C. § 3553(a), it was necessary to depart upward and sentence Harris as though he were a Career Offender. The court properly identified U.S.S.G. § 4A1.3 as an appropriate basis on which to depart upward from Harris' guidelines range. According to U.S.S.G. § 4A1.3, a district court may depart upward from an applicable guidelines range if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. This reliable information a district court may use to depart upward includes prior convictions that fall outside the time frame for calculating criminal history points if the prior convictions are evidence of similar or serious dissimilar conduct. U.S.S.G. § 4A1.2(e), comment (n.8). As noted by the Government, Harris' original advisory guidelines range did not include criminal history points for approximately forty of his prior convictions as they fell outside the applicable time period in U.S.S.G. § 4A1.2(e). Had these convictions been counted, Harris would have had an additional forty-eight criminal history points. Despite Harris' argument to the contrary, a number of his prior convictions

were similar in nature to his armed bank robbery conviction as the prior offenses involved violence and theft. Harris had twenty-four larceny convictions, seven misdemeanor assault convictions, and a conviction for being an accessory after the fact to robbery. Finally, the district court clearly articulated the basis and reasons for imposing a departure sentence on Harris. Accordingly, Harris' sentence was procedurally reasonable.

Harris' departure sentence was also substantively reasonable. Harris' alleges that his sentence was substantively unreasonable because of his poor health, limited vocational skills, and because he is not likely to reoffend. Harris committed his first offense in 1970, while still a juvenile. As the Government points out, for every year since Harris was first tried as an adult in 1973 until 2006, Harris was either incarcerated or committing a new crime. Moreover, his criminal behavior was often motivated by drug addiction, and had escalated over time into an armed bank robbery in which weapons were brandished at innocent bystanders. Finally, as the district court noted, Harris' criminal record indicates that it is a near certainty that he will reoffend. Accordingly, the court's decision to depart upward from Harris' original advisory guidelines range was substantively reasonable.

Harris' final argument on appeal is that the court employed the wrong method in departing upward from his original advisory guidelines range. According to Harris, the district court

determined what guidelines range it believed would be appropriate and then reasoned backward to rationalize the sentence. The district court did recognize that, typically, it is appropriate in granting an upward departure for a defendant in criminal history category VI, to increase from offense level to offense level until an appropriate guidelines range is found. Harris argues that if the court had employed this approach his sentencing range would have been 130-162 months. The court, however, simply sentenced Harris as though he were a Career Offender, which Harris contends was erroneous.

Harris' final claim is without merit. As we have consistently recognized, an upward departure does not require the sentencing court "to move only one level or to explain its rejection at each and every intervening level." Dalton, 477 F. 3d at 199 (quoting United States v. Little, 61 F.3d 450, 454 (6th Cir. 1995)). See United States v. Lawrence, 349 F.3d 724, 729 (4th Cir. 2003); United States v. Cash, 983 F.2d 558, 562 (4th Cir. 1992)(stating that "once the district court determines that a departure under U.S.S.G. § 4A1.3, p.s. is warranted and that the defendant's prior criminal conduct is of sufficient seriousness to conclude that he should be treated as a career offender, the district court may depart directly to the guideline range applicable to career offenders similar to the defendant.").

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED