PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

v.

JEFFREY LYNN MYERS,

     *Defendant-Appellant.*

No. 08-4343

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(5:06-cr-00033-RLV-1)

Argued: October 27, 2009

Decided: December 16, 2009

Before KING, Circuit Judge, HAMILTON, Senior Circuit
Judge, and Anthony J. TRENGA, United States District
Judge for the Eastern District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge King wrote the opin-
ion, in which Senior Judge Hamilton and Judge Trenga
joined.

## OPINION

**ARGUED**: Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Cecilia Oseguera, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

KING, Circuit Judge:

Jeffrey Lynn Myers pursues this appeal from a 360-month sentence imposed in the Western District of North Carolina following his jury convictions on multiple drug offenses. Myers presents two contentions on appeal: First, that the district court erred in excluding certain evidence relating to the prior criminal conduct of a prosecution witness; and, second, that the court erred in sentencing him to a prison term in excess of his properly calculated advisory Guidelines range. As explained below, we reject those contentions and affirm.

I.

A.

Myers was initially indicted in the Western District of North Carolina on June 28, 2006. An amended six-count indictment — the operative charging document here — was returned on December 19, 2006. It alleged five counts against Myers: conspiracy to distribute cocaine base, commonly known as "crack" or "crack cocaine," and cocaine powder, in contravention of 21 U.S.C. § 846 (Count One); plus four counts of possession with intent to distribute crack and cocaine powder, in contravention of 21 U.S.C. § 841(a)(1) (Counts Two, Three, Four, and Five). An eighteen-year-old

codefendant named Rachel Couch was charged with the conspiracy offense plus a single count of possession with the intent to distribute crack (Count Six). Myers pleaded not guilty and was tried by jury in January 2007. Couch pleaded guilty to both of her charges and testified against Myers. On January 26, 2007, the jury returned a guilty verdict against Myers on all five counts.

1.

Myers's first appellate contention concerns the evidence underlying his conviction on Count Five. The key prosecution witness against Myers on that charge, which alleged an § 841(a)(1) offense on May 16, 2006, was a man named John Redmon. Redmon, a convicted felon, had been arrested in February 2006 on a charge that he sold crack cocaine to an informant on November 15, 2005. After his arrest, Redmon contacted David Ramsey, a detective in the Iredell County Sheriff's Office, offered to serve as an informant to "work[ ] [the charges] off," and began to cooperate with the authorities. J.A. 213. Redmon was never convicted of any charge arising from the November 2005 drug transaction.

With Redmon's cooperation, Detective Ramsey arranged for a controlled drug purchase in which Redmon was to purchase drugs from Myers with $900 in marked cash. This transaction was completed on May 16, 2006, on Clay Street in Statesville, North Carolina, a drug-infested area that was familiar to Redmon. Myers met Redmon on Clay Street, where Redmon paid Myers the $900 cash for an ounce of cocaine. Redmon then met with Detective Ramsey at a nearby rendezvous point. Redmon's trial testimony — that Myers sold drugs to him on May 16, 2006 — is the only direct evidence against Myers on Count Five.

During cross-examination, Myers's lawyer sought to impeach Redmon with the facts underlying his November 2005 drug transaction and his February 2006 arrest for that

offense. Redmon admitted that he had been arrested in February 2006, and that his arrest arose from a drug transaction with an informant in November 2005. Redmon challenged the accuracy of the police report relating to his arrest, however, including its assertion that he had advised the informant to wait while he finished cooking crack, that he had sold the informant an eight-ball of crack, and that he had secreted drugs in his mouth during the arrest. To the contrary, Redmon insisted that he made no such statement to the informant, that he had not "sold anybody anything," and that he had not placed anything in his mouth when he was arrested. J.A. 226-27.

2.

Following Redmon's testimony, the prosecution called Detective Ramsey to the witness stand. On cross-examination, Myers's lawyer focused on disputing the transaction between Myers and Redmon on May 16, 2006, which underlies Count Five. More specifically, the defense lawyer sought to undermine Redmon's credibility, and to show that Myers was not the source of the cocaine that Redmon returned to Detective Ramsey after the Clay Street transaction. In that regard, Ramsey admitted that Redmon knew other individuals on the Clay Street block where the drug buy occurred; that Redmon's sister resided on that block; that it is easier in that area for non-outsiders to purchase drugs; and, that "[Redmon] could have brought drugs from some people." J.A. 297.

B.

At the conclusion of its case-in-chief, the Government objected to evidence that it expected Myers to present. Specifically, the Government maintained that Myers would call police officers "in an attempt to impeach Mr. Redmon on a specific act of criminal conduct," i.e., the November 2005 drug sale that led to Redmon's arrest in February 2006. J.A. 359. The prosecutor contended that such evidence was inad-

missible under Federal Rule of Evidence 608(b), which bars the use of extrinsic evidence to attack a witness's character for truthfulness.[1] Myers's lawyer argued, on the other hand, that such evidence was admissible under Federal Rule of Evidence 404(b), as proof of Redmon's "opportunity, plan, knowledge, absence of mistake or accident, all in conformity with his being a drug dealer at the time and around the time of this transaction." *Id.* at 367.[2] According to Myers's lawyer, the officers he desired to call would testify that Redmon indeed cooked crack while an informant waited, sold crack to that informant, and, when arrested, put something in his mouth that he later identified as ecstasy.

After assessing Myers's proffer and the contentions of counsel, the district court ruled in favor of the prosecution, explaining that the proffer concerned "evidence to which [Redmon] admitted, being a former crack dealer and having been arrested as he testified and so forth. So it's not a matter of high probative value for the defendant even if it were otherwise admissible." J.A. 366-67. The court also observed that the proposed evidence would require "a mini trial." *Id.* at 369. As a result, the court sustained the objection and barred the proffered defense evidence. The case against Myers was then submitted to the jury, which returned its guilty verdict on January 26, 2007.

---

[1]Federal Rule of Evidence 608(b), on which the prosecution based its objection, provides in pertinent part that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. . . .

[2]Federal Rule of Evidence 404(b), on which Myers predicated his argument of admissibility, provides in pertinent part that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . opportunity . . . .

## C.

### 1.

On March 12, 2008, Myers appeared for his sentencing hearing. According to the Presentence Investigative Report (the "PSR"), Myers had an offense level of 30 and a criminal history category of III, which resulted in an advisory Guidelines range of 121 to 151 months of imprisonment. The district court adopted the PSR but reduced the drug weight attributed to Myers, resulting in an offense level of 28 and an advisory Guidelines range of 97 to 121 months. Myers was nevertheless subject to a mandatory minimum sentence of 10 years, resulting in a final Guidelines range of 120 to 121 months.

During the sentencing hearing, the prosecution contended that Myers's Guidelines range underrepresented his criminal history. It maintained that, but for the prohibition in the Guidelines on considering outdated and stale sentences, specified in section 4A1.2(e), Myers would be sentenced as a career offender.[3] The Government further asserted that three of Myers's four prior convictions were outdated only because

---

[3]Section 4A1.2(e) of the Guidelines instructs courts to calculate a defendant's criminal history by accounting for prior sentences as follows:

> (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

> . . . .

> (3) Any prior sentence not within the time periods specified above is not counted.

This provision also applies "to the counting of convictions under § 4B1.1," the career offender provision. USSG § 4B1.2, app. n.3.

his criminal career had been interrupted when he was imprisoned for more than fifteen years between December 1990 and January 2006. Thus, the prosecution asserted that Myers was a "de facto" career offender and suggested that the district court consider the following four convictions, including the three that were otherwise outdated:

- a 1990 conviction in a federal drug conspiracy case, resulting in a sentence of 210 months, with four years supervised release;

- a 1986 conviction for possession with intent to sell and deliver cocaine, and the sale or delivery of cocaine, resulting in a sentence of five years;

- a 1985 conviction for felonious possession of a controlled substance with intent to sell and deliver, and the sale of cocaine, resulting in a sentence of five years; and

- a 1979 conviction for robbery and assault with a deadly weapon, resulting in a sentence of ten years, with five years probation.[4]

Under the career offender provision of the Guidelines, however, Myers's 1990 conviction was the only one that "counted," as Myers had been incarcerated on that conviction within fifteen years of commencing the instant offense of conviction. *See* USSG §§ 4B1.1, 4B1.2.

---

[4]Under the Guidelines instructions for computing a defendant's criminal history, sentences that "resulted from offenses contained in the same charging instrument" or that "were imposed on the same day" are treated as one sentence. *See* USSG § 4A1.2(a)(2). Thus, regardless of whether multiple convictions were involved in these four convictions, we refer to each of them as a single "conviction."

2.

Contending that there was a substantial underrepresentation in the seriousness of Myers's criminal history, the Government argued to the sentencing court that Myers was a de facto career criminal and requested an upward departure, pursuant to section 4A1.3 of the Guidelines, or alternatively, an upward variance.[5] The prosecution explained that Myers, who was forty-three years old when the instant offense of conviction occurred in 2006, began his criminal career at the age of sixteen. According to the prosecutor, Myers had been "arrested or cited 24 times since 1979, eight of which resulted in convictions," and only one of which was not deemed stale by the Guidelines. J.A. 539. The prosecutor stressed that Myers was a recidivist, asserting that "[e]very time [Myers] gets out, he gets into further trouble." *Id.* She explained that Myers "had done all of this federal time and within a month of getting out he's back in the drug game," referring to the fact that Myers had been last released from prison in January 2006, and almost immediately became involved in the instant offense of conviction, for which he was arrested in June 2006. *Id.*

The prosecution also argued for an increased sentence predicated on the nature of the instant offense of conviction, emphasizing that Myers was responsible for getting codefendant Couch, an eighteen-year-old woman, involved in his drug activities. The prosecutor emphasized that Myers "is not only a user of drugs, he's a user of people," arguing that Myers had manipulated "a very malleable, vulnerable young female . . . into selling drugs for him." J.A. 539-40. In her oral presentation, however, the prosecutor mistakenly referred to Couch as a "high school student." *Id.* at 540. This mischarac-

---

[5]Section 4A1.3 of the Guidelines provides, in pertinent part, that "[i]f reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."

terization was then amplified, with the prosecutor also referring to Couch as "a high school girl," whom Myers had manipulated into "sell[ing] his dope." *Id.* at 546.

Although the district court did not characterize Couch as a high school student during the sentencing hearing, it stated that "[Myers] was putting drugs into schools through an 18-year-old." J.A. 586. And Myers's lawyer failed to object to the prosecution's references to Couch as a "high school student," or to the court's statement that Myers "put[ ] drugs into schools" through Couch. Soon thereafter, however, the prosecutor sought to correct her misstatement, explaining that the Government "just wanted to clarify for the record [that Couch] was not in high school. She was in beauty school, college at the time. . . . And the drugs she was distributing was at the time she was at beauty school." *Id.* The court responded, "assuming that is an accurate statement, the analysis remains the same." *Id.* Neither party made any additional comment on the court's characterization of the facts.

The sentencing court then ruled from the bench that an upward departure was warranted, explaining that "the defendant has a serious record which would have been scored at 18 points were it not for the age of the offenses." J.A. 582-83. The court first recognized that Myers's earlier three sentences were stale for career offender purposes because Myers had been in custody from 1990 to 2006. It then observed that Myers's "term in prison did not serve to correct his behavior with respect to a law-abiding disposition," as evidenced by his involvement in the instant offense of conviction "within a month of his release, and while he was on supervised release." *Id.* at 583. Thus, the court found Myers's past record to be "very serious," that his conduct demonstrated that he was a "serious risk for recidivism," and that there was a "need to protect the public." *Id.*

The district court concluded that had Myers's other three convictions been counted, he would have had 18 criminal his-

tory points and a resulting criminal history category of VI. Importantly, Myers would have been classified as a career offender, with a criminal history category of VI and an offense level of 37, subject to imprisonment for 360 months to life. As the court explained, because the "seriousness of the offense requires the court's sentence to promote respect for the law and provide just punishment," as well as "adequate deterrence," it was "utilizing the character and nature of the guidelines, and particularly the career offender category, to put the defendant at this sentencing level he finds himself in." J.A. 586.[6] After deciding to make an upward departure, the district court sentenced Myers to 360 months on each of his five convictions, to run concurrently with each other, plus eight years of supervised release.[7]

Myers thereafter filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review the evidentiary rulings of a district court for abuse of discretion. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). A trial court's exercise of such discretion is "entitled to substantial deference," *United States v. Murray*, 65 F.3d 1161, 1170 (4th Cir. 1995), and "will be upheld so long as it is not 'arbitrary or irrational,'" *United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003) (quoting *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir. 2002)).

---

[6]During the sentencing hearing, the court observed that, "if [the career offender] departure were not applied, the court would then move to the question of variance under [18 U.S.C. §] 3553(a)," which the court believed would also support a sentence equivalent to an offense level of 37. J.A. 583-84. Because we affirm the court's upward departure, however, we need not determine whether the challenged sentence could be justified as a variance.

[7]Because Myers resumed his criminal career in early 2006, almost immediately upon being released from his 1990 sentence, he violated his conditions of supervised release, for which Myers was also sentenced to 33 months.

We are obliged to review a sentence imposed by a district court for reasonableness, applying an abuse of discretion standard. *Gall v. United States*, 128 S. Ct. 586, 594 (2007). This standard of review encompasses both procedural and substantive reasonableness. *Id.* at 597. We first ensure that the court committed no significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range . . . [or] selecting a sentence based on clearly erroneous facts." *Id.* If no procedural error was committed, we review the sentence for substantive reasonableness, taking into account the "totality of the circumstances." *Id.* Indeed, "an appellate court *must* defer to the trial court and can reverse a sentence *only* if it is unreasonable, even if the sentence would not have been the choice of the appellate court." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008).

### III.

Myers presents two contentions on appeal. His first contention concerns the trial court's exclusion of the evidence he sought to introduce with respect to Redmon. Myers also contends that he is entitled to be resentenced, as the court's upward departure was both procedurally and substantively unreasonable. We address these contentions in turn.

### A.

First, Myers maintains that the district court erred by excluding the evidence he intended to present concerning Redmon's sale of crack to an informant in November 2005 and Redmon's arrest in February 2006, and that this evidentiary error contravened his constitutional rights to present evidence in his defense. Myers argues that the evidence he sought to present was "reverse 404(b)" evidence, which would have undermined the prosecution's case on Count Five by showing that Redmon was a drug dealer who could have obtained elsewhere the cocaine that he claims to have purchased from Myers for $900. Thus, Myers contends that the

proffered evidence was admissible under Rule 404(b), which authorizes the admission of a witness's other crimes or acts for certain limited purposes. The Government, on the other hand, contends that the court properly ruled that the prejudicial nature of the proffered evidence substantially outweighed its probative value, if any, and that the court did not abuse its discretion in so ruling.

Rule 404(b) authorizes the admission of evidence of a witness's other wrongs, acts, or crimes "for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." *United States v. Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005) (identifying such evidence as "reverse 404(b)" evidence) (internal quotation marks omitted). Such evidence can be admitted under Rule 404(b) when, inter alia, its probative value is not substantially outweighed by its prejudicial nature under the balancing test of Federal Rule of Evidence 403. *See Queen*, 132 F.3d at 995, 997.[8]

Put simply, we are obliged to reject Myers's contention that the district court abused its discretion in excluding the reverse 404(b) evidence.[9] In short, the court determined that the evi-

_____

[8]Pursuant to Rule 403, relevant evidence may nevertheless be excluded by the trial court "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[9]As noted, Myers also maintains that the court's exclusion of his proffered evidence contravened his Fifth and Sixth Amendment rights to present evidence in his defense. Because Myers failed to preserve this contention below, however, it is reviewed for plain error only, and we may grant relief only if: (1) there is an "error"; (2) the error is "plain"; (3) the error affects the defendant's "substantial rights"; and, (4) the error "seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). In *Chambers v. Mississippi*, the Supreme Court recognized that criminal defendants are bound by the "established rules of procedure and evidence

dence — that Redmon could readily have purchased cocaine from someone else — had already been presented to the jury. The jury had heard evidence that Redmon was a convicted drug felon, that he had recently been charged with selling drugs to an informant, and that he otherwise had access to drugs in the area where the Count Five transaction occurred. Thus, the trial court was within its discretion to rule as it did, that further evidence on this issue was not "of high probative value," and that it would result in a "mini trial." J.A. 366, 369.[10]

B.

Next, Myers challenges his sentence, contending that it is both procedurally and substantively unreasonable. First, Myers asserts that the district court committed a procedural error by predicating his sentence, at least in part, on an incorrect finding of fact — that Myers had put drugs "into schools" through an 18-year-old student. Second, Myers asserts that the court imposed a substantively unreasonable sentence by utilizing his outdated prior convictions to enhance the sentence imposed, treating Myers as if he were a career offender. We assess these sentencing contentions in turn.

---

designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. 284, 302 (1973). Accordingly, there is no constitutional error when a trial court properly applies the rules of evidence to determine that the prejudicial effect of proffered evidence substantially outweighs its probative value. As we conclude that the district court properly applied the applicable rules of evidence, Myers's claim of constitutional error fails to satisfy the first prong of the plain error test.

[10]Although the district court acted within its discretion in excluding the proffered evidence, any error in that regard would probably have been harmless in any event, as the evidentiary contention is solely linked to Count Five and Myers's sentencing as a de facto career criminal was unaffected by Count Five.

1.

First, Myers contends that the sentencing court made a clearly erroneous finding of fact when it declared that he had put drugs "into schools" through his 18-year-old co-conspirator, Ms. Couch — a fact that was also mentioned in the court's written statement of reasons for its sentence. J.A. 586, 692. Any error made by the court in that respect is harmless, however, because it departed upward on the basis of Myers's criminal history and recidivism and sentenced him as if he were a career offender. That upward departure was in no way predicated on the court's assertedly mistaken observation that Myers had put drugs "into schools" through Couch. Thus, any such factual error is necessarily harmless.

2.

Myers also asserts that his sentence was substantively unreasonable because the district court's upward departure was necessarily erroneous. In pursuing this contention, he argues that all but one of the four sentences considered by the court in making the upward departure were too outdated to qualify as predicate convictions under the career offender provision of the Guidelines. According to Myers, therefore, his sentence should not have been enhanced because he lacked the requisite number of qualifying predicate convictions.[11] Thus, he contends that the court abused its discretion in making the upward departure.

An upward departure may be warranted when a sentencing court finds a defendant's criminal history category to inadequately represent his criminal history or his likelihood of

---

[11]Myers does not claim that his instant offense of conviction or his predicate offenses are otherwise insufficient to support sentencing him as a career offender. Thus, his challenge to the upward departure is predicated entirely on the prohibition on considering outdated convictions and sentences contained in section 4A1.2(e) of the Guidelines.

recidivism. *See* USSG § 4A1.3. Although section 4A1.2(e) of the Guidelines prohibits considering outdated convictions and sentences in initially determining the advisory Guidelines range, such convictions and sentences can justify an upward departure for inadequate criminal history: "If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 [the inadequate criminal history provision]." *Id.* § 4A1.2(e), app. n.8. More-over, where "underlying past criminal conduct demonstrates that the defendant would be sentenced as a career offender but for the fact that one or both of the prior predicate convictions" was not counted, the sentencing court may "depart directly to the career offender guideline range." *United States v. Cash*, 983 F.2d 558, 562 (4th Cir. 1992) (authorizing departure to de facto career offender status where otherwise permissible pred-icate sentence was disqualified as constitutionally infirm); *see United States v. Lawrence*, 349 F.3d 724, 729 (4th Cir. 2003) (approving departure to de facto career offender status where convictions consolidated for sentencing were not counted sep-arately).

For an upward departure to de facto career offender status to be permissible, "the defendant has to have been convicted of two prior crimes each of which constitutes [a career offender predicate offense]." *United States v. Harrison*, 58 F.3d 115, 118 (4th Cir. 1995). According to the Guidelines, career offender status is warranted

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a con-trolled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).

In assessing the totality of Myers's past criminal conduct and threat of recidivism, the district court found that an upward departure under section 4A1.3 was warranted, and that a sentence predicated on that departure would satisfy the 18 U.S.C. § 3553(a) sentencing factors.[12] In that regard, the court found that Myers had a "serious criminal record," but that only one of his four previous convictions had been counted in his PSR due to his intervening term of imprisonment from 1990 to 2006. J.A. 582-83, 692. The court recognized that, but for the dates of his earlier convictions, Myers would have had three more career offender convictions. Two of these earlier convictions (the 1985 and 1986 convictions) are for serious drug offenses, similar to the instant offense of conviction, while the third earlier conviction (the 1979 conviction) is for a dissimilar, but serious, violent felony. Next, the court found that, despite Myers's incarceration from 1990 to 2006, he had not been rehabilitated. For example, Myers became involved in the instant offense of conviction almost immediately after being released from prison in 2006 and while he was on supervised release. Thus, the court determined that Myers presented a "serious risk for recidivism." *Id.* at 583, 692. On these facts, which were thoroughly articulated at the sentencing hearing and in the court's written statement of reasons, the court did not abuse its discretion in ruling that an upward departure under section 4A1.3 was warranted.

Finally, Myers contends that we have heretofore approved of an upward departure to the de facto career offender level only where a prior conviction has not been counted because

---

[12]Section 3553(a) of title 18 outlines the "factors to be considered in imposing a sentence." 18 U.S.C. § 3553(a). Such factors include, for example, the following "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant"; and, "the kinds of sentences available." *Id.*

of a constitutional infirmity or because two or more prior offenses were consolidated for sentencing. *See Cash*, 983 F.2d at 563; *Lawrence*, 349 F.3d at 729. This argument also fails, however, because we have never recognized that those are the *only* circumstances where such a departure is appropriate. *Cf. United States v. Harris*, 241 F. App'x 88, 91 (4th Cir. 2007) (unpublished) (approving departure to de facto career offender status where approximately forty prior offenses were uncounted as stale under section 4A1.2(e) of the Guidelines); *United States v. Cooper*, 15 F. App'x 115, 116 (4th Cir. 2001) (unpublished) (finding no plain error where court sentenced defendant as de facto career offender based on outdated convictions). Indeed, the application notes to the relevant Guidelines provisions specifically provide that outdated sentences can support an upward departure for an inadequate criminal history. *See* USSG § 4A1.2(e), app. n.8. Because three of Myers's stale sentences are for similar, or serious dissimilar, conduct, the court did not abuse its discretion in connection with the upward departure.

## IV.

Pursuant to the foregoing, we reject each of Myers's appellate contentions and affirm the judgment.

*AFFIRMED*