**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4296**

───────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

DENNIS RAY HOWARD,

            Defendant - Appellant.



───────────

**No. 13-4299**

───────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

DENNIS RAY HOWARD, a/k/a D,

            Defendant - Appellant.



───────────

Appeals from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   James C. Dever III,
Chief District Judge.  (5:97-cr-00098-D-1; 5:12-cr-00009-D-1)

───────────

Argued:  September 17, 2014       Decided:  December 4, 2014

───────────

Before MOTZ and DIAZ, Circuit Judges, and DAVIS, Senior Circuit
Judge.

───────────

Judgment in No. 13-4296 affirmed in part, and vacated and remanded in part; appeal in No. 13-4299 dismissed by published opinion. Senior Judge Davis wrote the opinion, in which Judge Motz and Judge Diaz joined.

---

**ARGUED:** Robert Lonnie Cooper, COOPER, DAVIS & COOPER, Fayetteville, North Carolina, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

DAVIS, Senior Circuit Judge:

In appeal No. 13-4296, a jury convicted Dennis Ray Howard on one count of conspiracy to distribute and possess with intent to distribute a controlled substance, phencyclidine ("PCP"), nine counts of distribution of PCP, and one count of possession of a firearm in furtherance of a drug trafficking offense. The district court sentenced Howard to a term of life imprisonment plus 60 months. In appeal No. 13-4299, the court imposed a consecutive sentence of 60 months for violation of supervised release arising from the convictions in appeal No. 13-4296.

Howard noted timely appeals from both judgments, but he has abandoned his appeal of the revocation sentence in No. 13-4299, which we dismiss. As to the drug trafficking appeal, he challenges the sufficiency of the evidence supporting each of his convictions and the substantive reasonableness of his sentence. For the reasons set forth within, we affirm the convictions, vacate the sentence as substantively unreasonable, and remand for resentencing.

I.

A.

In September 2010, Wilson, North Carolina narcotics investigator Jason Corprew was investigating drug activity at a residence on Black Creek Road when he learned from a

3

confidential informant, C.B.[1], that Howard, or "D" as he was commonly known, sold C.B. a "dipper" from the residence. Dippers are cigarettes that are saturated in PCP. Over the course of the next month, C.B., along with another informant, A.B., returned to the Black Creek Road residence at the direction of Corprew to make several controlled purchases of PCP from Howard. All told, the informants purchased PCP from Howard, either together or individually, six times between September 20 and October 13, 2010. A third confidential informant, A.I., participated in two controlled purchases of PCP from Howard in 2011. At the first transaction, a middle man for Howard, Desmond Farmer, delivered a one-ounce vial of PCP to A.I. on Howard's behalf. At the second transaction, however, Howard personally delivered two vials of PCP to A.I.

The controlled purchases continued with the assistance of T.W. In May 2011, Wilson Police arrested T.W. on drug charges. T.W. agreed to assist Corprew in the investigation of Howard, and arranged to purchase one ounce of PCP from him. Howard agreed to bring the PCP to T.W.'s house. Surveillance officers at Howard's house on Vick Street observed him leaving the

---

[1] We have withheld the full names of the confidential informants and government cooperators in this case in accordance with recent guidance issued by the Judicial Conference Committee on Court Administration and Case Management.

residence and driving to T.W.'s house, talking to a woman who answered the door, and returning to his vehicle. Shortly thereafter, a Wilson police officer conducted a traffic stop of Howard's car and he detected the odor of PCP. A search of Howard's car revealed a glass vial containing one ounce of PCP. Officers placed Howard under arrest and then obtained a search warrant for Howard's home, where he lived with his girlfriend. Officers found a loaded pistol with one round in the chamber and a box of ammunition in the living room. In an adjoining den, officers found an operational police scanner, an envelope bearing Howard's name and address that contained black plastic caps of the type used in the sale of PCP, and a piece of cardboard with a description of vial containers and a "discountvial.com" web address. Officers did not find any PCP during their search of Howard's home.

B.

On January 17, 2012, a federal grand jury in the Eastern District of North Carolina returned a nine-count indictment against Howard. Count One charged Howard with conspiracy to distribute and possess with intent to distribute PCP, in violation of 21 U.S.C. § 846. Counts Two through Seven and Count Nine charged Howard with distribution of PCP, in violation of 21 U.S.C. § 841(a). Count Eight similarly charged Howard with distribution of PCP, and aiding and abetting another to do the

same. On September 25, 2012, the grand jury returned a superseding indictment, which retained the original charges and added two new charges: an additional count of distribution of PCP in violation of 21 U.S.C. § 841(a), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Prior to trial, the Government filed a notice of intent to seek an enhanced penalty based on Howard's previous convictions in state court in North Carolina of felony drug offenses.

Trial began on October 15, 2012. Investigator Corprew, two confidential informants, and T.W. testified to the controlled purchases, some of which were recorded by audio and video surveillance. Four cooperating individuals also testified to their previous PCP drug dealing with Howard.[2] At the close of the

---

[2] One individual, Q.S. testified that, beginning in January 2010, he visited Howard's home at least once a week over the course of five months to purchase vials of PCP.

D.W. and R.W. were coconspirators of Howard but were indicted together in a separate case, entered into plea agreements, and testified against Howard. They explained how the PCP drug trade in Wilson operated. D.W. testified that he, R.W., and Howard shared the same PCP supplier in Washington, D.C. D.W. also testified that, given the relatively few PCP dealers in Wilson, when his supply of PCP was depleted, he would refer customers to Howard. On several occasions, D.W. and Howard purchased PCP directly from one another, rather than from their shared Washington, D.C. supplier. D.W. also admitted to participating in PCP deals with Howard at Howard's home. R.W. testified to his practice of "cutting" or diluting his PCP supply with olive oil. Customers in search of a more potent
(Continued)

6

evidence, the jury returned a verdict of guilty on all counts in the superseding indictment. On October 22, 2012, Howard timely renewed his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion.

## C.

During the above events, Howard was on supervised release based on a 1997 federal narcotics trafficking conviction. Accordingly, in January 2013, Howard's probation officer filed an amended petition for revocation of supervised release based on the instant convictions. Thereafter, the district judge conducted Howard's sentencing and revocation hearings.

The Presentence Investigation Report ("PSR") for the new drug trafficking convictions originally recommended a base offense level of 26 and a criminal history category of III, which equated to a Guidelines range of 78 to 97 months.[3] As the Government had filed a notice of enhanced sentence pursuant to 21 U.S.C. § 851, however, the enhanced Guidelines range was 120

product would purchase PCP from Howard. In an effort to redirect business back to himself, R.W. would purchase unadulterated PCP from Howard for resale.

[3] There is no dispute that on Count Eleven, the gun count, a mandatory sentence of 60 months consecutive to the sentence on the conspiracy and drug trafficking counts would be imposed as required under the applicable statute.

months, the statutory mandatory minimum sentence. The Government also objected to the drug weight described in the PSR, pointing to some of the anecdotal testimony of other drug deals from some of its trial witnesses. The district court agreed that the drug weight in the PSR underestimated the amount of PCP within the realm of relevant conduct, and adopted an increased drug weight, which bumped Howard's base offense level from 26 to 28, slightly modifying the Guidelines range to 120 to 121 months.[4]

The district court next considered whether to depart upwardly, a possibility the court had previously expressed pursuant to Federal Rule of Criminal Procedure 32(h). The Government argued that under U.S.S.G. § 4A1.3(a)(1), an upward departure was warranted because Howard's criminal history category (III) substantially underrepresented the seriousness of his criminal history. It requested an upward departure to a criminal history category of VI, which, at an offense level of 28, yielded a sentencing range on the drug trafficking counts of 140 to 175 months. Thus, in its initial allocution at sentencing, the Government urged the district court to impose a sentence within that Guidelines range.

---

[4] Hereafter, we treat Howard's final Guidelines calculation on the drug trafficking counts, with grouping and before the departure, as offense level 28, criminal history category III.

8

The district court was not satisfied. It elected to analyze Howard as a "de facto" career offender and thereby consider Howard's otherwise stale (and thus unscored) prior convictions. In so doing, the court arrived at a criminal history category of VI and an offense level of 37. After following the Career Offender Guidelines, the district court arrived at a sentencing range of 420 months to life for the conspiracy charge in Count One, and a range of 360 months to life for the substantive charges in Counts Two through Ten, which carried a statutory maximum of 360 months.[5]

---

[5] The district court then suggested that it was proper to add "the 60 months consecutive" for Count Eleven ("the gun count") on top of the "420 months to life on count 1 and [the] 360 months on counts 2 through 10." J.A. 725. This suggestion was erroneous, however, because § 4B1.1(c) of the Sentencing Guidelines already factors in a conviction under 18 U.S.C. § 924(c) ("the gun count") in prescribing the appropriate career offender guideline range. Section 5G1.2 of the Guidelines and the accompanying application notes then provide instructions on how to apportion a career offender sentence to ensure that the sentence complies with all statutory minimums. For instance, if the district court here had selected a sentence of 420 months, 360 months would have been apportioned to Count 1 (the conspiracy count) and 60 months would have been apportioned to Count 11 (the gun count) to comply with the requirements of 18 U.S.C. § 924(c). See U.S.S.G. § 5G1.2 app. n.4(B)(i). It is impossible, however, to subtract a mandatory 60-month consecutive sentence from a sentence of life in prison. The district court's sentence in this case - life in prison plus 60 months - was therefore consistent with the Guidelines.

The district court next considered the § 3553(a) factors and concluded that Howard deserved the maximum sentence of life in prison:

> I do think for all the reasons outlined under the 3553 (a) factors, the nature and circumstances of the offense, these 11 very serious offenses, the history and characteristics of this defendant and the unrelenting, unrepenting, unreformed drug dealing, society needs to be protected. He needs to be incapacitated. People need to be deterred. There needs to be just punishment. There needs to be serious consequences for serious crimes.

J.A. 737–38.[6] The court imposed a sentence of life imprisonment on Count One, 360 months imprisonment (concurrent) for Counts Two through Ten, and 60 months (consecutive) for Count Eleven. It also stated that, in the alternative, it would impose the same sentence as an alternative variant sentence.

At the subsequent hearing on the petition for revocation of supervised release, the court revoked supervised release and sentenced Howard to the maximum possible sentence: 60 months imprisonment consecutive to the sentences for his new convictions. Thus, Howard is now serving a consolidated sentence of life plus 120 months. As we have mentioned, although Howard timely appealed both judgments, he has abandoned the appeal of his supervised release revocation sentence.

---

[6] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

10

Howard presents two issues. First, we consider his argument that the district court erred in denying his motion for judgment of acquittal because the evidence presented at trial was insufficient to support his convictions. Second, pursuant to supplemental briefing ordered nostre sponte by this Court, we consider whether the district court imposed a substantively unreasonable sentence. We address each issue in turn.

A.

Howard contends that the evidence presented at trial was insufficient as a matter of law to sustain each of his convictions. For purposes of our analysis, we have grouped Howard's distribution convictions together and will discuss the sufficiency of the evidence for the conspiracy, distribution, and firearm convictions separately.

We review a district court's decision to deny a motion for judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, de novo. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). In its assessment of a challenge to the sufficiency of evidence, a reviewing court views the evidence "in the light most favorable to the prosecution and decide[s] whether 'substantial evidence' supports the verdict." United States v. Jeffers, 570 F.3d 557, 565 (4th Cir. 2009) (quoting Smith, 451 F.3d at 216). Substantial evidence is

11

"evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Smith, 451 F.3d at 216 (citation and internal quotation marks omitted).

We begin our analysis with Count One, which charged that Howard conspired to distribute and possess with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of PCP. Howard contends that the Government failed to establish evidence that he was aware of, or agreed to participate in, a conspiracy. He argues that the Government made no showing of mutual trust, standard dealings, or drug fronting between himself and any coconspirator. We disagree.

To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove that "(1) [the defendant] entered into an agreement with one or more persons to engage in conduct that violated 21 U.S.C. §[] 841(a)(1). . . ; (2) that [the defendant] had knowledge of that conspiracy; and (3) that [the defendant] knowingly and voluntarily participated in the conspiracy." United States v. Mastrapa, 509 F.3d 652, 657 (4th Cir. 2007). Given the "clandestine and covert" nature of conspiracies, the government can prove the existence of a conspiracy by circumstantial evidence alone. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). A mere buyer-seller

12

relationship is insufficient to support a conspiracy conviction. United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011). However, such evidence "'is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists.'" Id. (quoting United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993)). "[E]vidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs." United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008) (citing Burgos, 94 F.3d at 858).

Against this legal framework, we do not hesitate to conclude that the Government presented sufficient evidence to support the conspiracy conviction. Several witnesses testified to Howard's role in the PCP drug trade in Wilson, North Carolina. Howard and D.W. sourced PCP from the same Washington, D.C. supplier. When D.W.'s supply of PCP was exhausted, he would refer customers to Howard. Howard, in turn, would refer customers to D.W. when his own supply was low. At times, both men purchased PCP from one another when traveling to D.C. was inopportune. Howard also sold PCP to frequent customers who often resold the drugs. A.I. testified that she regularly sold PCP in Wilson and at times she replenished her supply from Howard, her "local source." J.A. 285. R.W. testified to his practice of selling low-quality PCP before purchasing potent PCP

from Howard in an effort to regain customers. Taken together, this evidence demonstrated that Howard was part of a "loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market" in the Wilson area. United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Accordingly, the jury's verdict as to Count One is amply supported.

B.

Turning to the distribution convictions in Counts Two through Ten, we also find that the Government's evidence was sufficient to sustain the convictions. Howard merely states, without explanation, that his motion for judgment of acquittal as to the distribution convictions should have been granted. While such a passing, conclusory assertion is "insufficient to raise on appeal any merits-based challenge to the district court's ruling[,]" see Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n.7 (4th Cir. 2006), we nevertheless briefly address the abundance of evidence demonstrating Howard's guilt.

To prove that a defendant distributed a controlled substance in violation of 21 U.S.C. § 841(a)(1), "the prosecution is obliged to prove 'that (1) [the] defendant knowingly or intentionally distributed the controlled substance alleged in the indictment, and (2) at the time of such

14

distribution the defendant knew that the substance distributed was a controlled substance under the law.'" United States v. Alerre, 430 F.3d 681, 689 (4th Cir. 2005) (alteration in original) (quoting United States v. Tran Trong Cuong, 18 F.3d 1132, 1137 (4th Cir. 1994)).

The Government presented evidence of controlled purchases between Howard and several others, including two confidential informants and a cooperating individual. C.B. purchased dippers and one ounce of PCP from Howard. A.I. directly purchased PCP from Howard on one occasion, and Howard personally delivered an ounce of PCP to T.W.'s home. Count Eight further charged Howard with aiding and abetting the distribution of PCP, which the Government established by virtue of A.I.'s testimony that she purchased PCP through Howard's middle man, Desmond Farmer. The Government's evidence is plainly sufficient as to Counts Two through Ten, and we discern no infirmity in the jury's verdicts.

C.

We next turn to Count Eleven, which charged that Howard "knowingly possessed a firearm in furtherance of a drug trafficking offense . . . in violation of Title 18 United States Code 924(c)." J.A. 68. In order to convict Howard of Count Eleven, the prosecution was required to prove beyond a reasonable doubt that Howard "(1) used, carried, or possessed a firearm (2) in furtherance of a drug trafficking crime."

15

_Jeffers_, 570 F.3d at 565 (citing 18 U.S.C. § 924(c)(1)(A)). In _United States v. Lomax_, 293 F.3d 701 (4th Cir. 2002), we defined the statutory term "furtherance" in § 924(c) as "the act of furthering, advancing, or helping forward." 293 F.3d at 705. Thus, we concluded that § 924(c) "requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." _Id._ Whether the firearm served such a purpose, we explained, is a factual inquiry. _Id._ Factors that could lead a fact finder to conclude that a defendant possessed a firearm in furtherance of a drug crime include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." _Id._ (citation and internal quotation marks omitted).

The evidence adduced by the Government here crosses the threshold from minimal to legally sufficient. Officers found a loaded pistol with a round in the chamber and ammunition in the living room of Howard's residence. In the adjoining den, officers found a working police scanner and plastic vial caps. The Government also established, from the testimony of Q.S. and D.W., that Howard often sold PCP from the shed on his property.

16

While officers did not find drugs in Howard's home at the time of the search, the theory that the presence of the firearm served to protect Howard from a potential theft of his drugs or profits is nevertheless a plausible one. See Lomax, 293 F.3d at 705.

The firearm was readily accessible to Howard; it was hidden beneath a couch cushion in the living room. The ammunition was stored nearby in the couch's center console. The firearm and drug paraphernalia were also in close proximity to one other, as they were found in adjoining rooms. Drawing from the evidence of black plastic caps and the cardboard with the "discountvial.com" web address and vial description, a rational jury could conclude beyond a reasonable doubt that Howard used the firearm to protect his drug trafficking operation. It may be that, at the time of the search, Howard's supply of PCP was low or exhausted, and that he was preparing for a new supply; this might explain the absence of drugs in the residence. But such speculative hypotheticals have no role to play in our sufficiency appraisal. For these reasons, we decline to find error in the district court's denial of Howard's motion for judgment of acquittal as to Count Eleven.

### III.

Having affirmed Howard's convictions, we now decide whether the sentence imposed by the district court was unreasonable.

17

A.

We review the reasonableness of a sentencing decision under an abuse of discretion standard. United States v. Heath, 559 F.3d 263, 266 (4th Cir. 2009). "This standard of review encompasses both procedural and substantive reasonableness." United States v. Myers, 589 F.3d 117, 123 (4th Cir. 2009) (citation omitted). A district court commits procedural error when, for example, it fails to calculate (or improperly calculates) the Guidelines range, fails to consider the § 3553(a) factors, or selects a sentence based on clearly erroneous facts. Gall v. United States, 552 U.S. 38, 51 (2007). Howard does not claim that the district court committed any procedural error, and we agree with that assessment.[7] Our review of Howard's sentence, therefore, is limited only to substantive reasonableness.

A review for substantive reasonableness takes into account the "totality of the circumstances." Id. As part of this review, we consider

the extent of any variance from the Guidelines range . . . [I]f the sentence is outside the Guidelines range,

---

[7] As we explained at n.5, supra, the district court's misstatement of the proper method for factoring in an 18 U.S.C. § 924(c) conviction under the Career Offender Guidelines did not affect the sentence the court chose to impose in this case.

18

> the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.

Id. If the district court deviates from the Guidelines range and provides two or more independent rationales for its deviation, the appellate court cannot declare the sentence unreasonable if it finds fault with only one of the rationales. United States v. Evans, 526 F.3d 155, 165 (4th Cir. 2008). Such an approach "would be wholly inconsistent with the Supreme Court's directives to examine the totality of the circumstances, and to defer to the considered judgment of the district court." Id.

B.

The district court reached its life imprisonment sentence by making an upward departure based on Howard's de facto career offender status, and by reasoning that the § 3553(a) factors supported a sentence at the top of the Guidelines range determined after the departure. Because we are persuaded that the extent of the upward departure is unwarranted and amounts to an abuse of discretion, and because, in any event, a sentence of life in prison on this record is not justified by consideration of the § 3553(a) factors as articulated by the district court, we conclude that the sentence imposed is substantively unreasonable.

19

1.

Howard's original Guidelines range called for 120-121 months of imprisonment, plus a consecutive 60 months for the firearm offense. The district court made an upward departure and treated Howard as a de facto career offender, which resulted in an increase from criminal history category III to VI, and an increase from a base offense level of 28 to 37.

Section 4B1.1(a) of the Guidelines provides that a defendant is a career offender if: (1) the defendant was at least eighteen years old at the time of the commission of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has been convicted of two prior crimes, each of which was a felony conviction of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A district court may depart directly to the career offender Guideline range when the defendant's criminal history demonstrates that the defendant would be sentenced as a career offender "but for the fact that one or both of the predicate convictions may not be counted." United States v. Cash, 983 F.2d 558, 562 (4th Cir. 1992). Thus, de facto career offender status is permissible when the defendant has been convicted of two prior crimes, each of which constitutes a career offender predicate offense. Myers, 589 F.3d

20

at 126. While the de facto career offender doctrine is settled law in the Fourth Circuit, see Cash, 983 F.2d at 562, the district court's departure to de facto career offender status in this case resulted in a sentencing range — and, ultimately, an actual sentence — that was "greater than necessary" to achieve the purposes of federal sentencing. 18 U.S.C. § 3553(a); see also Rita v. United States, 551 U.S. 338, 350 (2007) (explaining that the Guidelines seek to embody § 3553(a) factors and that they reflect "a rough approximation of sentences that might achieve § 3553(a)'s objectives").

"When reviewing a departure, we consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. McNeill, 598 F.3d 161, 166 (4th Cir. 2010) (citation and internal quotation marks omitted), aff'd on other grounds, 131 S. Ct. 2218 (2011).[8] An upward departure may be warranted if

---

[8] We have recognized that our deferential reasonableness review of sentences is the same whether the district court departed within the formal strictures of the Sentencing Guidelines or, instead, imposed a variant sentence outside the explicit boundaries of the Sentencing Guidelines. United States v. Hargrove, 701 F.3d 156, 160 n.1 (4th Cir. 2012); United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011). Thus, in this case, the district court's explanation that it would have imposed the same sentence as a variant sentence even if it were determined that its upward departure to the career offender guideline was an abuse of discretion does not alter our
(Continued)

21

"reliable information indicates that the defendant's criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). A district court may base an upward departure pursuant to § 4A1.3 on a defendant's prior convictions, even if those convictions are too old to be counted in the calculation of the Guidelines range. See § 4A1.2(e) (describing the applicable time period for calculating prior sentences).

Howard's conviction in 1997 for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base undoubtedly qualified for calculation. Howard was twenty-five years old when he was convicted, and he served more than ten years in prison. The district court found that three otherwise stale convictions, incurred by Howard from 1990 and earlier, justified its qualification of Howard as a virtual career offender. In 1988, at the age of sixteen, Howard pled guilty to two counts of selling cocaine to an undercover officer. He served approximately four months in prison. In 1990, at the age of eighteen, Howard pled no contest to voluntary manslaughter and served nine months in prison and one additional month after

analysis of the substantive reasonableness of Howard's life-plus-sixty-months sentence.

22

his parole was revoked for technical violations. While the inclusion of Howard's prior convictions in the calculation of the Guidelines range has raised no procedural error, it resulted in a range that was nothing short of extreme.

2.

The district court's decision to upwardly depart rested heavily on our <u>Myers</u> decision, which the district court concluded was "almost on all fours." J.A. 718. We disagree with that characterization. In <u>Myers</u>, we rejected the defendant's argument that his sentence was substantively unreasonable because the district court made an upward departure based on his outdated predicate convictions. Only one of Myers's four predicate convictions had been counted in his PSR, and but for the dates of his earlier convictions, and an intervening term of imprisonment, Myers would have qualified as a career offender.

Similarly, here, Howard would have been classified as a career offender had his juvenile convictions for the sale of cocaine and voluntary manslaughter not been outdated. Myers, however, displayed a consistent pattern of recidivism immediately upon release from prison, and an offense for which Myers was convicted involved conspiracy to distribute cocaine base with an eighteen-year-old female. Most of Howard's serial convictions occurred between the ages of sixteen and eighteen.

23

After Howard's release from prison in June 2008, he held steady employment for more than a year.

The facts of the present case are also readily distinguishable from those in United States v. Lawrence, 349 F.3d 724 (4th Cir. 2003), and Cash, in which we similarly affirmed decisions by district courts to depart upward on the basis of de facto career offender status. In Lawrence, the district court determined that an upward departure of one level in the criminal history category did not reflect the seriousness of Lawrence's past criminal conduct. The court concluded that Lawrence was a de facto career offender, in part, because two of his qualifying predicate convictions were consolidated for sentencing purposes. Lawrence's criminal history was violent, and quite dissimilar to Howard's record. While Lawrence and Howard share a lengthy juvenile record, Lawrence's juvenile convictions consisted largely of thefts and assaults. Lawrence hardly ever completed parole or probation successfully. Furthermore, Lawrence attempted a jail break and carjacking while en route to prison, and he admitted to committing two other bank robberies for which he was never convicted.

The defendant in Cash challenged his upward departure on the ground that one of his predicate convictions was constitutionally invalid. We concluded that the district court was free to consider a constitutionally invalid conviction as

24

evidence of the defendant's prior criminal conduct for the purpose of determining the extent of a departure. Cash's criminal history included a remarkable number of forty prior adult convictions over a seventeen-year period, a far cry from Howard's criminal record.

An additional point is worth noting. Despite the grave criminal records that Myers, Lawrence, and Cash had in common, not one of those defendants was sentenced to life in prison as a result of an upward departure to the career offender Guideline. The district court sentenced Myers to 360 months imprisonment; Lawrence's sentence was a total of 262 months of imprisonment; and the district court sentenced Cash to 210 months imprisonment. These sentences pale in comparison to Howard's sentence of life imprisonment plus 60 months. Cf. United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir. 2008)("[W]hen determining whether the district court's proffered justification for imposing a non-guidelines sentence is sufficiently compelling to support the degree of the variance, common sense dictates that a major departure should be supported by a more significant justification than a minor one.") (internal citation and quotations omitted).

3.

We acknowledge that Howard would never be mistaken for a model citizen, but we cannot ignore the fact that most of his

25

serious criminal convictions occurred when he was eighteen years old or younger. Two convictions, when Howard was seventeen years old, involved providing fictitious information to a police officer. Howard's other juvenile convictions include second degree trespass and possession of cocaine. Three convictions that Howard received as an adult are related to driving without a license or driving while his license was revoked. The facts presented here are thus distinct from those in our relevant circuit precedent.

The district court abused its discretion by focusing too heavily on Howard's juvenile criminal history in its evaluation of whether it was appropriate to treat Howard as a career offender and in its weighing of the § 3553(a) factors after having done so. An appellate court owes "due deference" to a district court's assessment of the § 3553(a) factors, and mere disagreement with the sentence below is "insufficient to justify reversal of the district court." Gall, 552 U.S. at 51. A review for substantive reasonableness, however, "demands that we proceed beyond a formalistic review of whether the district court recited and reviewed the § 3553(a) factors and ensure that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants." Evans, 526 F.3d at 167 (Gregory, J., concurring).

26

Since the Supreme Court's decision in Gall, this Court has, on rare occasion, found a district court's sentence substantively unreasonable. In United States v. Engle, 592 F.3d 495 (4th Cir. 2010), we vacated a district court's sentence of four years probation for a defendant convicted of tax evasion because we could not glean from the district court's decision why it failed to impose a term of imprisonment as recommended by the Guidelines. We also addressed the substantive component of the sentence and noted that the district court committed error by its "near-exclusive focus on Engle's financial ability to pay restitution." Engle, 592 F.3d at 504. We noted that "[i]t may well be that in many cases, the sentencing decision will ultimately turn on a single § 3553(a) factor." Id. However, we viewed the district court's rationale of declining a term of imprisonment based solely on the defendant's ability to pay restitution as a "constitutionally suspect" ground. Id. at 505.

Here, too, the district court focused extensively on a single factor — Howard's early criminal history — and it did so at the expense of a reasoned analysis of other pertinent factors. "Sentencing courts remain obligated not to 'give excessive weight to any relevant factor' and to impose a sentence 'which effect[s] a fair and just result in light of the relevant facts and law.'" United States v. Tucker, 473 F.3d 556, 562 (4th Cir. 2007) (quoting United States v. Green, 436 F.3d

449, 457 (4th Cir. 2006)); see also United States v. Hampton, 441 F.3d 284 (4th Cir. 2006) (vacating defendant's sentence as unreasonable because the district court relied on only one aspect of one § 3553(a) factor).

The district court began its discussion of the § 3553(a) factors by discussing the "nature and circumstances" of the offense and "history and circumstances of the defendant." J.A. 733. The court ticked through the instant offenses of conviction and stated that it understood the difficult circumstances in which Howard was reared. J.A. 733. The district court then summarized Howard's criminal record, labeling it as "robust." J.A. 733. As we have described, Howard received most of his convictions when he was eighteen years old or younger. The Supreme Court has recognized, in the sentencing context, the diminished culpability of juvenile offenders, given their lack of maturity, vulnerability to social pressures, and malleable identities. See, e.g., Miller v. Alabama, 132 S. Ct. 2455, 2464 (2012) (holding that a state sentencing scheme that mandated life without parole for offenders under the age of eighteen at the time the offense was committed violates the Eighth Amendment); Graham v. Florida, 560 U.S. 48, 68 (2010) (adhering to Roper's statements regarding the nature of juvenile offenders and holding that a life without parole sentence for a juvenile defendant who did not commit homicide violates the Eighth

28

Amendment's prohibition on cruel and unusual punishment); Roper v. Simmons, 543 U.S. 551, 569-70 (2005) (describing these three general differences between juveniles under eighteen and adults). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" Graham, 560 U.S. at 68 (quoting Roper, 543 U.S. at 573).

The district court's sentence failed to appreciate what we cannot ignore – that the three predicate convictions, upon which the district court focused so heavily in assessing its departure and sentencing options, occurred when Howard was between sixteen and eighteen, and that youth is a "mitigating factor derive[d] from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." Roper, 542 U.S. at 570 (citation and internal quotation marks omitted). Cf. Barry C. Feld, The Youth Discount: Old Enough To Do The Crime, Too Young To Do The Time, 11 Ohio St. J. Crim. L. 107, 137 (2013) ("The [Supreme] Court's jurisprudence of youth recognizes that juveniles who produce the same harms as adults are not their moral equals and do not deserve the same consequences for their immature decisions.").

4.

We are persuaded, as well, that the district court committed an abuse of discretion insofar as it concluded, summarily, that a life sentence was not greater than necessary in this instance based on its belief that Howard was "at the top" of its list of criminal offenders. J.A. 720. According to the court, Howard was, at his core, a career criminal: "It's who he is. It is what he has done. It's what he has always done. It's how he lives his life." J.A. 722. Despite the fact that Howard is now a middle-aged offender, the district court predicted that, "the likelihood of recidivism for this man [is] 100 percent. Absolutely 100 percent. If he is living free, he will be committing crimes. He will be dealing drugs. It's who he is. It's what he does." J.A. 727. The court, in an apparent attempt to justify the life sentence that it was about to impose, noted the need to deter Howard individually, to incapacitate him, and to "prevent [him] from poisoning people." J.A. 735.

Given the long sentence (short of life) that Howard no doubt would have received from any federal judge reviewing the instant record, sound empirical evidence strongly suggests that the likelihood that Howard will recidivate upon his release is substantially lower than the district court suggested. Howard was forty-one years old when he was sentenced, and studies

30

demonstrate that the risk of recidivism is inversely related to an inmate's age. A 2014 Bureau of Justice Statistics report, which tracked the recidivism rates of state prison inmates for five years post-release, notes that three years after release from prison, 75.9% of inmates age 24 or younger at the time of release had been rearrested for a new offense, compared to 69.7% of inmates ages 25 to 39, and 60.3% of inmates age 40 or older. Matthew R. Durose, et al., Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010, Bureau of Justice Statistics 12 (2014), http://www.bjs.gov/index.cfm?ty=pbdetail&iid=4986. A 2002 report, which tracked inmates three years after release, noted that more than 80% of prisoners under 18 were rearrested, compared to 45.3% of those age 45 or older. Patrick A. Langan et al., Recidivism of Prisoners Released in 1994, Bureau of Justice Statistics 12 (2002), http://www.bjs.gov/index.cfm?ty=pbdetail&iid=1134. No doubt statistics for offenders released after age 60 are even more compelling. See generally Vera Inst. of Justice, It's About Time: Aging Prisoners, Increasing Costs, and Geriatric Release (April 2010), http://www.vera.org/pubs/its-about-time-aging-prisoners-increasing-costs-and-geriatric-release-0. Indeed, there is no reason to believe that offenders sentenced in North Carolina are significantly different in this regard from those

sentenced in, say, Iowa: "There is a statistically significant drop in recidivism for offenders aged 45 to 54 compared with 35 to 44 year olds, and rates for those aged 55 and older are even lower." Lettie Prell, Iowa Recidivism Report: Prison Return Rates, FY 2013 7 (2014), http://www.doc.state.ia.us/Research/TrendsRecidivismFY13.pdf. (All reports saved as ECF opinion attachments).

One might gather from the district court's statements that it was sentencing a notorious drug lord at the top of an unremittingly violent and widespread organization, but Howard hardly fits that description. Under § 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Part of this analysis contemplates the "extent and seriousness" of the instant offense. United States v. Diosdado-Star, 630 F.3d 359, 367 (4th Cir. 2011). As noted above, the district court recited the offenses for which Howard was convicted. However, the facts underlying Howard's convictions simply do not warrant the sentence imposed. Howard was not a drug kingpin. He had no stronghold on the PCP market in Wilson. To the contrary, at trial, several witnesses testified to their own participation in the PCP drug trade. A.I., D.W., and R.W. all imported PCP from Washington, D.C. into Wilson, just as Howard did. Indeed, by virtue of the conspiracy conviction, the Government proved that

32

Howard was no lone wolf in the Wilson PCP drug trade. Howard also has not dealt drugs near children or school zones, and he has not resorted to violence. Howard's convictions are not insignificant, and we credit the Government's contention at sentencing that the PCP drug problem in Wilson is terrible and pervasive. J.A. 730. However, by all of the descriptions of Howard presented at trial and reflected in the record before us, he was little more than a run-of-the-mill drug dealer.

5.

Notably, even <u>after</u> the district court had expressed its view that Howard should be treated as a de facto career offender, the Assistant United States Attorney herself <u>twice</u> <u>urged the court to impose a far shorter sentence than that</u> <u>ultimately imposed by the district court</u>. In its initial allocution at sentencing, in supporting its request for a modest upward departure, and even while acknowledging the district court's elaboration of its belief that Howard should be treated as a career offender, the Government requested an upward departure only in his criminal history category (from III to VI), and advocated for a sentence at the top of the resulting range of 175 months.[9]

---

[9] The Assistant United States Attorney stated:

(Continued)

33

The district court immediately challenged the prosecutor to explain "why . . . shouldn't [the sentencing range] be higher." J.A. 720. After discussion, see id. at 720-25, the Government agreed with the court that Howard should be treated as a career offender, see id. at 726, but then, the Government suggested a 360-month sentence (mindful, no doubt, that through the combination of the mandatory consecutive 60-month sentence to be

> Thank you, Your Honor. Your Honor, as the court is familiar and has already referenced, the Government did file a motion for upward departure, but the court beat the Government to the punch in filing its notice. Your Honor, as I have set out in my motion, this defendant has, as the court has already mentioned, his robust criminal history, basically almost none of which was scored for the purposes of this PSR. Your Honor, not only does it involve drug trafficking since the age of 16, but also homicide, a voluntary manslaughter conviction was pled down from murder where the defendant received a six months sentence, and I have set out and I don't know that I need to talk about it in any kind of detail, kind of walking through the criminal history and how basically almost all of the criminal history overlaps each other. He is basically either on probation or on parole or on some sort of supervision just about during his entire criminal history and during the course of his time in the department of corrections, the bureau of prisons, didn't do terribly well there either. But based on those things, the fact that he really, you know, but for the age of the convictions would be a career offender, the Government is asking this court to upwardly depart and I think, as I set out in the motion for upward departure, I think the appropriate guideline range would be one of a 28 as a career offender as a VI, with advisory guideline range of 140 to 175.

J.A. 719-20 (emphasis added).

34

imposed on the gun count, and the still outstanding adjudication of the supervised release violation, another ten years was available to further seek retribution against Howard).[10]

We acknowledge, as we must, that no district court is ever mandated to impose the sentence recommended by the prosecution; the very idea is unthinkable in our constitutional system rooted in an independent judiciary. Still, the prosecutorial experience of the assistants in the Office of the United States Attorney in any district can serve as an important pillar in the achievement of one of the principal goals of the Sentencing Reform Act of 1984 and its system of (now advisory) Guidelines sentencing: the avoidance of unwarranted sentencing disparities. See 28 U.S.C. § 991(b)(1)(B) (describing the purposes of the United States Sentencing Commission); U.S.S.G. ch. 1, pt. A, subpt. 3; 28

---

[10] We note in passing that Howard's coconspirators, D.W. and R.W., who entered into plea agreements with the Government and testified against Howard, see supra n.2, were sentenced to prison terms of 131 months, and 76 months, respectively. We further observe that, in a commonly-encountered reversal of fortunes well known to the members of this Court, Howard himself had pled guilty and provided "substantial assistance" to the Government against others in connection with his 1997 drug trafficking conviction in the Eastern District of North Carolina, and thereby obtained a sentence reduction from 227 months to 150 months of incarceration pursuant to Federal Rule of Criminal Procedure 35(b).

It is in light of these kinds of considerations, among others, that the sentencing recommendations of the members of the Office of the United States Attorney are entitled to genuine consideration by district courts.

U.S.C. § 3553(a)(6)(instructing courts of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").[11]

6.

By declaring Howard a serial recidivist dedicated to dispensing "poison" with no hope of redemption, and by basing this judgment on stale criminal history, the bulk of which was non-violent and committed when Howard was a juvenile, the district court failed in its effort to comply with the aims of sentencing prescribed by § 3553(a)(2).[12] The sentencing purposes set out in § 3553(a)(2) identify the need for the sentence to reflect the seriousness of the offense and provide just punishment, afford adequate deterrence to criminal conduct, protect the public from the defendant's crimes, and provide the

---

[11] Cf. Berger v. United States, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

[12] It seems quite apparent that the court was concerned that Howard's decades-old homicide conviction, which in the representation of the prosecutor, had been "pled down" to manslaughter, see supra n.9, especially justified, or at least warranted, harsh sentencing treatment in this case. Without passing on the propriety of that apparent choice, we simply observe that Howard was not charged, convicted, or sentenced in this case for any assaultive or other physically violent behavior.

defendant with rehabilitation. "The proper application of § 3553(a) therefore requires a sentencing court to focus on the four purposes of sentencing as applicable in a particular case, and to consider, in determining a sentence that achieves those purposes, the seven factors listed in § 3553(a)(1)-(7)." United States v. Shortt, 485 F.3d 243, 249 (4th Cir. 2007) (emphases in original); see also United States v. Dowell, --- F.3d ---, No. 13-4576, at *31 (4th Cir. 2014). "A sentence that fails to fulfill the purposes of sentencing cannot be saved, even if supported by consideration of the six other factors." Shortt, 485 F.3d at 249.

The district court plainly sought to intone all of the principles underlying § 3553(a)(2) when it announced its sentence. It stated the need for individual and general deterrence, incapacitation, and just punishment. J.A. 735. There is no doubt that the sentence sent a "message" of deterrence to the people of Wilson and the Eastern District of North Carolina. The district court made those intentions clear. But we simply fail to see, on the whole record, how the life-plus-60-months sentence reasonably reflects the seriousness of the offense or just punishment. Manifestly, it is a sentence "greater than necessary," 18 U.S.C. § 3553(a), to achieve the purposes of § 3553(a)(2).

We again acknowledge and reiterate that the sentencing judge "is in a superior position to find facts and judge their import under the § 3553(a) factors in the individual case[,]" see Gall, 552 U.S. at 51, but a district court's choice of sentence is not without limit. "Inherent in the concept of reasonableness is the notion that the rare sentence may be unreasonable, and inherent in the idea of discretion is the notion that it may, on infrequent occasion, be abused." Engle, 592 F.3d at 504 (citation and internal quotation marks omitted). This case presents an example of that rare sentence presented to us on those infrequent occasions. It goes without saying then, that our holding is limited to the facts of this case, and we do not suggest that all life sentences plus a term of years for convictions of the type here are per se substantively unreasonable.

## IV.

For the reasons set forth, we affirm the convictions on all counts, vacate the sentence as substantively unreasonable, and remand this case for resentencing.

JUDGMENT IN NO. 13-4296 AFFIRMED IN PART,
AND VACATED AND REMANDED IN PART;
APPEAL IN NO. 13-4299 DISMISSED