**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4000**

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

SANDY DARNELL LEDBETTER, a/k/a B Stacks,

          Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:16-cr-00111-D-8)

Submitted:  June 27, 2019                    Decided:  July 9, 2019

Before KING, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Anne M. Hayes, Cary, North Carolina, for Appellant.  G. Norman Acker III, First Assistant United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Phillip A. Rubin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sandy Darnell Ledbetter appeals the denial of his Fed. R. Crim. P. 29 motion for a judgment of acquittal and his convictions for conspiracy to distribute and possess with intent to distribute a quantity of cocaine (Count 1), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846 (2012), and possession of a firearm in furtherance of a drug trafficking crime (Count 5), in violation of 18 U.S.C. § 924(c)(1)(A) (2012). On appeal, Ledbetter challenges the sufficiency of the evidence supporting his firearm conviction. He also contends that the district court erred by permitting the jury to hear inadmissible hearsay testimony. Finding no reversible error, we affirm.

"We review de novo a district court's denial of a Rule 29 motion." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). "We must sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *Id.* "Substantial evidence is that which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017) (internal quotation marks omitted).

To convict Ledbetter of the § 924(c) charge, the Government was required to prove that he "(1) used, carried, or possessed a firearm (2) in furtherance of a drug trafficking crime." *United States v. Howard*, 773 F.3d 519, 527 (4th Cir. 2014) (internal quotation marks omitted). For a jury "to conclude that possession of [a] firearm[] was in

2

furtherance of drug trafficking," it must find that "there exists a sufficiently close nexus between the firearm[] and the drugs." *United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014) (internal quotation marks omitted). Among the factors relevant to this inquiry are "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, . . . the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Howard*, 773 F.3d at 527 (internal quotation marks omitted).

At trial, the Government proceeded on the theory that Ledbetter served as muscle for a drug trafficking organization ("DTO") run by his coconspirator, Maurio Mitchell. To that effect, the Government elicited testimony from another coconspirator, DeMarcus Medley, who claimed that Mitchell bragged that Ledbetter was one of his shooters. In addition, the Government presented ample evidence indicating that, at the time of his arrest, Ledbetter unlawfully possessed a loaded firearm that police recovered from a residence containing several items associated with illicit drug trafficking. In view of this substantial evidence, we conclude that the district court properly denied Ledbetter's Rule 29 motion.

Turning to the district court's evidentiary rulings, which we review for abuse of discretion, *Burfoot*, 899 F.3d at 340, we agree with Ledbetter's assertion that, over his objections, the court impermissibly allowed hearsay testimony from two Government witnesses—Jahid Diggs and Kentrail Carlton. Specifically, Diggs related an out-of-court statement from one of Ledbetter's coconspirators, who told Diggs that Ledbetter had been dealing cocaine, and Carlton offered testimony, concededly not based on his

3

personal knowledge, that Ledbetter carried a firearm to protect Mitchell during drug deals. Nevertheless, reversal is unnecessary because the district court's evidentiary errors are harmless. *Id.*

> An error is harmless if we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. Put another way, an error is harmless if it's highly probable that it did not affect the judgment. The decisive factors to consider are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.

*Id.* at 340-41 (citations, brackets, and internal quotation marks omitted). Although the district court neglected to cure these evidentiary errors, which went to the heart of the charges, the abundant incriminating evidence adduced by the Government leads us to conclude that the hearsay testimony did not substantially sway the jury's decision.

As to the drug conspiracy charge, Diggs recounted a conversation with Ledbetter that occurred while the two men were incarcerated together. According to Diggs, Ledbetter asserted that he would never betray Mitchell, who gave Ledbetter his first brick of cocaine. These jailhouse admissions from Ledbetter were far more harmful to his defense than Diggs' hearsay testimony. *See United States v. Abdallah*, 911 F.3d 201, 216 (4th Cir. 2018) ("[A] defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." (internal quotation marks omitted)).

Moreover, Carlton also directly implicated Ledbetter in the conspiracy, testifying that Ledbetter sold cocaine and cocaine base as part of Mitchell's DTO. Carlton also stated that he saw Ledbetter with Mitchell on five or six different occasions at an

4

apartment where drugs were cooked and sold. Next, a police officer testified about an intercepted phone conversation in which Mitchell asked Ledbetter to switch from an audio call to a video call. The officer explained that Mitchell often used video calls, which wiretaps cannot intercept, to discuss criminal matters with his coconspirators.

Finally, the Government played for the jury two music videos in which Ledbetter rapped about cocaine and his relationship with Mitchell. As we have recognized, "[l]yrics posted or authored by a defendant can be relevant if they match details of the alleged crime . . . because the fact that a defendant [rapped] lyrics about engaging in certain conduct makes it more probable that the defendant in fact engaged in that conduct." *United States v. Recio*, 884 F.3d 230, 235 (4th Cir. 2018). Thus, the jury certainly was in a position to conclude that personal experience informed Ledbetter's lyrics. In sum, in light of the overwhelming evidence establishing Ledbetter's involvement in the drug conspiracy, we find it highly probable that the district court's erroneous admission of the testimony at issue did not impact the jury's decision on Count 1.

With regard to the firearm charge, Medley testified that Mitchell boasted about having Ledbetter as one of his shooters. Because Medley based this claim on his personal interaction with Mitchell, this evidence was much stronger than Carlton's similar speculative testimony. In addition, although the district court failed to mitigate the effects of Carlton's hearsay testimony, both sides undermined the weight of this evidence by making the jury aware that Carlton premised his claim on conjecture, rather than personal observation. Next, the Government produced significant evidence tying

5

Ledbetter to a handgun found in a townhome where he stayed with his child's mother. Upon his arrest, Ledbetter told police where in the residence the gun was stored, thereby demonstrating his familiarity with the firearm and its location. Ledbetter also attempted to conceal his possession of the gun, first by having someone else purchase the weapon for him, then by asking that person to lie about the transaction because, according to Ledbetter, the gun "was the only thing going against him." (J.A. 457).[1] And although the jury heard testimony that Ledbetter wanted the gun to protect his family, the circumstances surrounding the gun's acquisition and recovery amply supported the conclusion that Ledbetter also used the firearm to further the drug conspiracy.

The Government also presented evidence connecting the firearm to the drug conspiracy. Specifically, although a search of the townhome did not uncover any significant quantity of cocaine, police did find a substantial amount of drug trafficking paraphernalia, including six cell phones, a digital scale, a money counter, and $14,000 in cash bound using the same bank bands found in the home of one of Ledbetter's coconspirators. Police also found a Pyrex bowl containing residue from a substance that field tested positive for cocaine.[2] Finally, in the two rap videos admitted into evidence, Ledbetter made at least eight different allusions to firearms, most of which included

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties.

[2] Another substance, found in plastic baggies, also field tested positive for cocaine but was later determined to be another controlled substance ("Molly"). Although law enforcement did not verify through laboratory testing that the substance in the Pyrex bowl was, in fact, cocaine, the testimony at trial established that Pyrex containers are used to cook cocaine, not Molly. Thus, the false field test on the plastic bag substance does not necessarily undermine the result of the field test conducted on the Pyrex bowl.

references to shooting or killing people.  Again, these lyrics increased the likelihood that Ledbetter engaged in the conduct described.  *Recio*, 884 F.3d at 235.  Based on our review of the evidence, we conclude that the erroneously admitted hearsay testimony did not substantially sway the jury's guilty verdict on Count 5.[3]

Accordingly, we affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3] Because the combined impact of these evidentiary errors was "not widespread or prejudicial enough to have fatally infected [Ledbetter's] trial," *United States v. Runyon*, 707 F.3d 475, 520 (4th Cir. 2013) (internal quotation marks omitted), we also reject Ledbetter's cumulative error argument.

7