**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-4121**

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

TYRONE MAURICE WILLIAMS,

              Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Terrence W. Boyle, District Judge. (4:14-cr-00043-BO-1)

———————

Argued: September 20, 2016          Decided: November 18, 2016

———————

Before TRAXLER and DUNCAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

———————

Affirmed in part; vacated in part and remanded with instructions by unpublished per curiam opinion.

———————

**ARGUED**: Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Barbara Dickerson Kocher, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tyrone Maurice Williams was indicted and pled guilty to Hobbs Act robbery, in violation of 18 U.S.C. § 1951 ("Count 1"); using and carrying a firearm during and in relation to and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 2"); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) ("Count 3"); and robbery of a credit union, in violation of 18 U.S.C. § 2113(a) ("Count 4"). We affirm Williams' convictions, vacate his sentence, and remand for resentencing before a different district judge.

I.

Counts 1 and 2 of the indictment in this case arose out of Williams' robbery of a Dollar General store in New Bern, North Carolina, on July 24, 2012. During the robbery, Williams shot the store cashier and store manager, inflicting serious physical injuries upon both men. Williams then forced the injured cashier to open the safe. He fled with $600 in currency. Count 3 involved an incident occurring in Winterville, North Carolina, in August 2012. Police officers responding to a noise complaint found Williams and others loitering around a vehicle. When the officers approached the group, Williams pulled a handgun from his waistband and fled on foot. Williams was apprehended and the gun was recovered. Count 4 arose out of Williams' armed

3

robbery of the First Flight Federal Credit Union in New Bern, North Carolina, in February 2014. Williams passed a threatening note demanding money to a teller. The teller put $4,373 in currency into an envelope and gave it to Williams. Subsequent to his arrest, Williams confessed to robbing the credit union, robbing the Dollar General store, and shooting the Dollar General employees.

Williams pled guilty as charged to all counts without a plea agreement. Counts 1 and 4 each carried a maximum statutory term of imprisonment of 20 years, and Count 3 carried a maximum statutory term of imprisonment of 10 years. The statutory range for Count 2 was 10 years to life imprisonment.

The presentence report grouped Counts 1, 3 and 4. Williams' adjusted offense level for Count 1 was 30, which included a 10-level increase for infliction of permanent or life-threatening bodily injury and abduction of a person to facilitate the commission of an offense. The adjusted offense levels for Counts 3 and 4, respectively, were 14 and 24. Under the grouping rules, the highest offense level of 30 was increased by 1, resulting in a combined adjusted offense level of 31. A 3-level reduction for acceptance of responsibility reduced the total offense level to 28. With a criminal history category of IV, Williams' advisory Guidelines sentencing range was 110 to 137 months' imprisonment. Count 2 required

4

imposition of a consecutive sentence and was excluded from the grouping rules. The advisory Guidelines sentence for Count 2 was the statutory minimum 10-year term of imprisonment. Neither Williams nor the government objected to the presentence report.

The district court held a sentencing hearing on January 21, 2015. The district court began the hearing by asking Williams if he "want[ed] to say anything about the punishment [he would] receive," to which Williams simply responded, "No, Sir." J.A. 24. What followed can only be described (at best) as a testy exchange between the district court and Williams about Williams' crimes and the district court's view that Williams was not remorseful. The district court began by demanding to know why Williams "tr[ied] to murder" the Dollar General employees. J.A. 24. When Williams stated that he "didn't try to murder them" and that "it wo[uld]n't happen" again, the district court informed Williams that "[i]t won't happen because I'm going to put you in jail forever." J.A. 25. When Williams acknowledged that he could not "change what happened," but did "have the opportunity to apologize" and "grow from it and become . . . a better person," the district court told Williams that there were "some things you can't apologize for" and that "[i]n some societies they would just eliminate you. . . . You won't have to worry about getting better, you would be gone." J.A. 27.

5

The district court then heard from the Dollar General victims about the effect the incident had upon their lives and the lives of their families. The district court stated that in more than three decades it had "never heard an allocution as powerful" as those offered by the victims and that, in contrast, Williams had been "brazen enough to look at these people whose lives he has crushed and driven into the ground with virtually no remorse." J.A. 41. The district court further stated that it could not "see any justification for a sentence below the maximum that the statute and law would permit," and suggested that the "appellate courts c[ould] listen to and read the testimony of the witnesses and the lack of contrition on the part of the defendant." J.A. 42.

At the conclusion of the hearing, the district court imposed a total term of imprisonment of 480 months. On Counts 1 and 4 (the two robbery charges), the district court imposed concurrent statutory maximum sentences of 240 months. The district court also imposed the statutory maximum sentence of 120 months for Count 3 (the felon-in-possession charge), but ordered that it run consecutively to the other counts in the group. This resulted in a sentence of 360 months on the three grouped counts. The district court then added the mandatory minimum sentence of 120 months on Count 2, raising the total term of imprisonment to 480 months.

6

The next day, however, the district court sua sponte gave notice to the parties of its intent to reopen the sentencing proceeding, and the court scheduled a hearing for January 27. At the inception of the hearing, the district court sought agreement from the government and Williams' counsel that it had the power to reopen the sentencing proceeding and change Williams' sentence. Both agreed that it did.

After "incorporat[ing] by reference everything that was said including the allocution participation at the last hearing," the district court stated that, "after thinking about how [it] imposed [the 480-month] sentence[,] [it] want[ed] to go back and remove that and consider a different approach to it." J.A. 51. The district court, upon "reflection," then imposed a total prison term of 360 months. J.A. 52. For grouped Counts 1, 3, and 4, the district court imposed a within-guidelines sentence of 120 months. For Count 2, the district court varied upward and imposed a consecutive sentence of 240 months (double the mandatory minimum and well below the statutory maximum of life imprisonment).

The district court explained its reconsideration of the 480-month sentence. First, the district court judge advised that he had been under the mistaken impression at the initial sentencing hearing that the maximum sentence that he could impose for Count 2 was 10 years' imprisonment. Second, the

7

district court judge observed that "under the guidelines and under sentencing law and taking 3553(a) into account," Count 2 was "the place where I should [have] upwardly depart[ed]," J.A. 52, because "the use of the firearm [was] the salient object in this case that caused all the damage," J.A. 54. Finally, the district court explained that "[i]n the fast moving way in which the hearing went dominated by the allocution there wasn't enough time to think about what an appropriate upward departure would be. And I believe after reflection this is what I should do." J.A. 53.

On appeal, Williams challenged his convictions on Counts 1 and 2, and his 360-month sentence as substantively unreasonable. The government did not appeal. We directed the parties to file supplemental briefs addressing the question of whether the district court had jurisdiction to reopen the sentencing proceeding and reduce Williams' sentence to 360 months. We also requested the parties to supplement their briefs to address the question of whether the 480-month sentence imposed by the district court was substantively reasonable.

## II.

Williams challenges his convictions on Counts 1 and 2 on the basis that the Hobbs Act is unconstitutional under the Commerce Clause of the United States Constitution. As Williams acknowledges, this argument is foreclosed by precedent. See

8

<u>United States v. Williams</u>, 342 F.3d 350, 354 (4th Cir. 2003). Accordingly, we affirm his convictions.

### III.

With regard to Williams' sentence, we conclude that the district court lacked jurisdiction to modify Williams' sentence from 480 months to 360 months, and thus it is the 480-month sentence that we review. Because we hold that the 480-month sentence was unreasonable, we vacate that sentence and remand for resentencing.

### A.

Rule 35(a) of the Federal Rules of Criminal Procedure-the provision upon which Williams relies to support the district court's jurisdiction-provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). "'[S]entencing' means the oral announcement of the sentence." Fed. R. Crim. P. 35(c); <u>United States v. Layman</u>, 116 F.3d 105, 108 (4th Cir. 1997). The district court's authority to modify a sentence under Rule 35(a) is "severely limited." <u>Id.</u> "The rule 'is not intended to afford the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence.'" <u>Id.</u> (quoting Fed. R. Crim. P. 35, Advisory Committee Notes on 1991 Amendments); <u>see also</u>

9

United States v. Fields, 552 F.3d 401, 405 (4th Cir. 2009) ("Congress limited the reach of Rule 35(a) because it wanted to promote openness and finality in sentencing.").

Here, the district court orally announced Williams' prison sentence on January 21, 2015, and resentenced Williams six days later because the court, "upon reflection," changed its mind about the ground for the upward departure and the appropriate extent of the departure. J.A. 52. The district court lacked the power to do so. See Fields, 552 F.3d at 404-05; Layman, 116 F.3d at 108. Because the 360-month sentence was issued without jurisdiction, we therefore deem it to be of no effect and not subject to appellate review. The operative sentence for our review is the 480-month sentence imposed on January 21, 2015.

## B.

Williams contends that the district court abused its discretion in imposing the 480-month sentence. We agree.

Under 18 U.S.C. § 3553(a), district courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and "impose a sentence sufficient, but not greater than necessary, to comply with" the statutory purposes of sentencing. Those purposes include "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford

10

adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).

Generally speaking, the district court must begin the sentencing process with a correct calculation of the applicable Guidelines range. See Gall v. United States, 552 U.S. 38, 49 (2007). "[T]he district court should then consider all of the § 3553(a) factors to determine whether they support [a particular] sentence." Id. at 49-50. "After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id. at 50. "The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." United States v. Hampton, 441 F.3d 284, 288 (4th Cir. 2006) (internal quotation marks omitted).

When reviewing the substantive reasonableness of a sentence, we "examine the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." United States v. Gomez-Jimenez, 750 F.3d 370, 383 (4th Cir. 2014) (internal quotation marks and alteration

11

omitted). And where, as here, the sentencing court has imposed a sentence that varies upward from the advisory Guidelines sentence, we must determine "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Washington, 743 F.3d 938, 944 (4th Cir. 2014) (internal quotation marks omitted); Gall, 552 U.S. at 50. We "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Pauley, 511 F.3d 468, 473-74 (4th Cir. 2007) (internal quotation marks omitted). "This deference is due in part because the sentencing judge is in a superior position to find facts and judge their import and the judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." United States v. Diosdado-Star, 630 F.3d 359, 366 (4th Cir. 2011) (internal quotation marks and alterations omitted).

No one can doubt the breadth and severity of Williams' crimes. And we cannot say at this juncture that a district court's decision to vary from the advisory Guidelines sentence in some way and in some measure could not be justified by the § 3553(a) factors. However, it is our duty to consider the totality of the circumstances that led to the district court's

12

decision to impose a specific variant sentence, along with the reasoned basis articulated by the district court for its decision.  Having taken these things into consideration, we must conclude that the district court abused its discretion.

First, the extent of the variance was significant.  The Guidelines sentencing range for grouped Counts 1, 3, and 4 was 110-137 months' imprisonment.  Although it would not alone render the sentence unreasonable, we note that the adjusted offense level for Count 1, which carried the highest adjusted offense level for the group, had already taken into account the fact that Williams inflicted serious bodily injury upon the Dollar General victims.  By imposing the statutory maximum sentences on Counts 1 and 4, removing Count 3 from the group, and imposing a consecutive instead of concurrent statutory maximum sentence on Count 3, the district court imposed a total sentence (360 months) for the grouped counts that was more than 2 1/2 times the top of the advisory range, before adding the mandatory minimum 10-year term on Count 2.  The end result was a 40-year sentence that was more than 18 1/2 years above the maximum advisory Guidelines sentence for all offenses.

Second, while we would normally be required to give due deference to a district court's application of the § 3553(a) factors and its concomitant determination that the variant sentence imposed was sufficient, but not greater than necessary,

13

to comply with the purposes set forth in § 3553(a), such deference is largely unwarranted under the unusual circumstances of this case. Here, the district court's determination, while ostensibly grounded in the § 3553(a) factors, was clearly affected by other matters. The record of the sentencing proceeding clearly conveys an unusually high degree of emotion, no doubt ignited by the district court's displeasure with Williams' decision not to allocute, and then fueled by the allocutions that were offered by the Dollar General victims. And contrary to the district court's belief at the time, our reading of the record does not automatically cause us to reject Williams' professed remorse for his actions. As the district court would later admit, the sentencing hearing was at least in some measure tainted by "the fast moving way in which the hearing went[,] dominated by the allocution," so as not to allow "enough time to think about what an appropriate upward departure would be," J.A. 53, and by its misinterpretation of the presentence report and failure to understand that it could have varied on the count that most troubled the court – Williams' use of the firearm to shoot the victims. Although the district court's change of heart alone does not suffice to establish the unreasonableness of the sentence, the events that occurred during the "resentencing" hearing do confirm our concerns about the sentence that was imposed at the first sentencing hearing.

14

To conclude, we are unable to say on the existing record that the district court "acted reasonably both with respect to its decision to impose [the variant] sentence and with respect to the extent of the divergence from the sentencing range." Washington, 743 F.3d at 944 (internal quotation marks omitted). Nor would our doing so in these circumstances "promote the perception of fair sentencing." Gall, 552 U.S. at 50. "Inherent in the concept of reasonableness is the notion that the rare sentence may be unreasonable, and inherent in the idea of discretion is the notion that it may, on infrequent occasion, be abused." United States v. Howard, 773 F.3d 519, 536 (4th Cir. 2014) (internal quotation marks omitted). "This case presents an example of that rare sentence presented to us on those infrequent occasions." Id. Accordingly, we vacate the 480-month sentence imposed by the district court as substantively unreasonable. In light of the circumstances, we also think a fresh start is in order. Accordingly, we will remand the case to a different district judge for resentencing.

IV.

For the foregoing reasons, we affirm Williams' convictions, vacate his sentence as unreasonable, and remand for resentencing before a different district judge.

AFFIRMED IN PART; VACATED IN PART
AND REMANDED WITH INSTRUCTIONS

15